[No. 9051.   Department One.   October 29, 1910.]

## EMMA E. LAFFOON *et al.*, *Appellants*, v. S. R. BALKWILL *et al.*, *Respondents*[1]

TRUSTS — PARTITION — RIGHTS UNDER CONTRACTS — DISCRETION OF TRUSTEES—CONTROL BY COURTS—DEDICATIONS—PLATS—VACATION. In the absence of fraud or manifest error from which fraud would be inferred, the courts will not control the discretion of trustees, under a trust agreement whereby lots and fractional lots in an addition not conforming to adjacent streets were conveyed to the trustees to secure vacation of the plat and to replat and thereafter distribute the new lots among the grantors as their general interest may appear, considering and preserving the rights, both legal and equitable of all, with power to assess owelty or benefits if deemed necessary to an equitable partition; and it is not necessary that the trustees consider the vacated portion of streets as additions to abutting property, where they estimated the relative value of the old lots and fractions and partitioned to the owners a proportionate part of the estimated value of the new lots as replatted.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered March 24, 1910, upon findings in favor of the defendants, after a hearing on the merits before the court, dismissing an action to enjoin the execution of a trust agreement.   Affirmed.

*Chas. S. Lyons* and *R. F. Laffoon*, for appellants.

*Stallcup & Keyes* and *Ernst Hoppe*, for respondents.

RUDKIN, C. J.—The plaintiffs and the defendants in this action, other than the defendants Balkwill, Wolbert and Schinn, are the owners of certain lots and fractional lots in

[1]Reported in 111 Pac. 455.

26—60 WASH.

Byrd's addition to the city of Tacoma, lying south of North
street, between Tacoma avenue and South G street. The
original streets in Byrd's addition did not conform to the
adjacent streets of the city, and some years ago Tacoma ave-
nue and South G street were extended through the addition,
leaving fractional lots on the west side of Tacoma avenue
and on the east side of South G street, with Third street, an
alley, and a full row of lots intervening, as will appear from
the following plat designated "Plat A":

The owners of the lots and fractional lots shown on "Plat
A" were desirous of making a replat of the land to conform
to the adjacent streets and alleys. In order to accomplish
this object the several lot owners conveyed their holdings to

the defendants Balkwill, Wolbert, and Schinn, as trustees, coupled with an agreement or stipulation prescribing the mode or manner in which the trust should be executed. The trust deed and trust agreement recited the purposes of the trust, authorized the trustees to procure a vacation of the existing plat, replat the property, and redistribute the same among the several owners as their general interests might appear. The provisions of the trust agreement, so far as material to our present inquiry, are as follows:

"It is further agreed that upon the conveyance of all of the tract as herein provided, the trustees shall cause the street and alley therein to be vacated and proceed to replat the tract into lots and blocks in accordance with the lots and blocks of the adjacent property and to dedicate a proper alley therein; to have such replat accepted by the city of Tacoma, and filed in the office of the auditor of Pierce county; and that when such replat has been accepted and filed as aforesaid, the said trustees shall partition said tract, according to said replat, and distribute such lots and blocks among the parties hereto, as their general interests may appear, considering and preserving the rights and interests, both legal and equitable of each and every of the parties hereto, and to convey to said parties their respective parts, parcels and amounts, according to such replat.

"It is further understood that the said trustees in making such partition may assess *owelty* or benefits in favor of or against any lot or lots, or parts of lots, as they may deem necessary to a fair, just and equitable partition among the general owners.

"It is further understood that upon the replat of said tract the trustees shall appraise the lots and fractional lots, if any, at their fair and reasonable value in money, without regard to the improvements thereon, if any, at as near their market value as can be ascertained.

"It is further understood that the improvements now upon any part of said tract shall not be removed or disturbed by the trustees; but that the owners of any of such improvements (buildings or other structures) shall have the preferred right to purchase the land, lot or lots or parts of lots, upon which such improvements rest, in case the same shall not have been allotted to him in the partition; provided he shall take

the whole of the allotment on which said improvement may rest. If such owner shall elect not to purchase, as aforesaid, at the appraised price, then he shall remove his improvements onto his own allotment at his own expense, and within such reasonable time and in such reasonable manner as the trustees shall direct.

"It is further understood and agreed that if the foregoing plan shall appear inadequate to effect the purposes of this trust, then the said trustees shall adopt such other plan or scheme of partition as will enable them to make a fair, just and equitable partition of said tract in accordance with the law and the rights of the parties hereto. That said trustees shall have and they are hereby given full and ample power to carry out this trust."

In the execution of the powers conferred upon them, the trustees caused the city to vacate the existing plat and filed a replat of the property, of which "Plat B," *supra*, is a fair illustration. The trustees then adopted the following plan for a redistribution of the property to the several owners and parties in interest: They viewed the premises, appraised the value of each lot or fractional lot, as shown on the old or original plat, at its fair market value, and fixed the value of all property on the old plat at the sum of $21,000. They next appraised the value of the several lots, as shown on the new plat, at their fair market value, and fixed the value of all such lots in the sum of approximately $30,000, or an increase of $9,000 over the old appraisement. They now propose to reconvey to the owners of the several lots and fractional lots in the old plat, lots or parts of lots in the new plat, equal in value to the property owned in the old plat, and in addition thereto sufficient other property to make up to each owner the proportionate share of the increased value caused by the replat. To illustrate: If A owned property in the old plat of the appraised value of $2,100, he will receive property in the new plat of the appraised value of $2,100, and in addition thereto 2100-21000 or 1-10 of the $9,000 increase caused by the replat.

The present action was instituted by the owners of a part of the property in the old plat, against the owners of the remainder of such property and the trustees, to restrain the latter from carrying out or executing their proposed plan of distribution. From a judgment dismissing the action, the present appeal is prosecuted.

It is perhaps unnecessary to describe the property originally owned by the several appellants, further than to say that it was property abutting on Third street which has been vacated. The principal contention of the appellants is that when Third street was vacated, one-half the street reverted to or vested in the property owners on either side of the street, and that this increase in the holdings of the abutting owners was not taken into consideration in the proposed plan of distribution. This contention is, in our opinion, untenable. Where a street or alley is vacated, no doubt the property in the street, as a rule, reverts to or vests in the abutting owners in equal parts, but this is not such a case. The streets and alleys in the old plat could only be vacated through the co-operation of the several owners and the city, and the property was all conveyed to trustees in order that this object might be accomplished. As soon as the street was vacated, title to the property in the street vested in the trustees for the purposes of the trust. The parties to the trust agreement might have agreed definitely upon a plan of distribution so as to leave no discretion in the trustees, but such a plan was perhaps deemed impracticable. At least the parties did not see fit to place any limitations or restrictions on the powers of their agents. The discretion vested in them was a very broad one, and that discretion the courts will not and cannot control in the absence of fraud or manifest error from which fraud might be inferred. There is no pretense in this cause that the trustees have acted fraudulently. A court of equity is simply asked to substitute its judgment and discretion for the judgment and discretion which the parties have voluntarily placed in other hands. This the courts uniformly decline to do.

Such was the conclusion of the court below, and its judgment is affirmed.

FULLERTON, MOUNT, PARKER, and GOSE, JJ., concur.